ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WALTER ODASZ CASTRILLO  Apelado  v.  ODASZ, MOLLY (SUCN); PATRICIA ODASZ CASTRILLO t/c/c PATRICIA MAZZUCA; ROBERT ODASZ; ORLANDO RIVERA NIEVES  Apelantes | KLAN202300814 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm.: K AC2016-0481  Sobre: Partición de Herencia |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Díaz Rivera y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2025.

La Sra. Patricia Odasz Castrillo t/c/c Patricia Mazzuca (señora Mazzuca o Apelante) presentó una *Apelación* para recurrir de la *Sentencia* emitida el 9 de agosto de 2023, notificada el 15 de agosto de 2023. En el aludido pronunciamiento, el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario) declaró Ha Lugar la demanda radicada. En consecuencia, condenó solidariamente a la señora Mazzuca y a Robert Odasz al pago de $53,851.45 a favor del señor Walter Odasz Castrillo (señor Odasz Castrillo o Apelado).

Anticipamos que, por los fundamentos que expondremos, confirmamos la *Sentencia* del caso.

**I.**

La Sra. Molly Odasz t/c/c Maria Amalia Rivera Lacourt; Molly Odasz Castrillo Lacourt (señora Molly o Causante) nació el 25 de octubre de 1920, en Mayagüez, Puerto Rico.[2] Tuvo tres hijos; el Sr.

---

[1] Mediante Orden Administrativa OATA-2023-212 se designó al Hon. José I. Campos Pérez en sustitución de la Hon. Alicia Álvarez Esnard.
[2] Apéndice 5 de la *Apelación,* págs. 62-72.

Walter John Odasz Castrillo, la Sra. Patricia Jeannette Odasz Castrillo y el Sr. Robert Wayne Odasz Castrillo, actualmente todos mayores de edad.[3]

Mediante Escritura Número Diecinueve (19), otorgada el 24 de noviembre de 2008, ante la notaria Yolina C. Souto Acero, la señora Molly otorgó una Escritura de Poder Especial a favor de su hija, la señora Mazzuca.[4]

Surge del expediente ante nos que, el 27 de mayo de 2009, el Apelado solicitó que se decretara la incapacidad de la señora Molly.[5]

Así las cosas, de los documentos presentados ante nuestra consideración surge que, la señora Molly falleció testada el 23 de enero de 2016.[6] Entre las disposiciones testamentarias, nombró a la señora Mazzuca albacea.[7]

Conforme a la Escritura de Testamento Número Cuatro (4) otorgada el 19 de octubre de 2004, ante la notario Griselle Teresa García Padilla, la causante instituyó como sus únicos y universales herederos a sus hijos, antes mencionados.[8] Además, en el testamento dejó un legado por tres mil dólares ($3,000.00) a su ahijado Orlandito Nieves.[9]

Por su parte, la señora Mazzuca presentó una solicitud jurada ante el TPI para que se expidiera a su nombre las Cartas Testamentarias, y así acreditar su autoridad como Albacea Testamentaria de la causante. Las referidas cartas fueron expedidas el 15 de abril de 2016.[10]

El 2 de junio de 2016, el señor Odasz Castrillo presentó una *Demanda* en la cual imputó unas deudas contra los demandados y

---

[3] *Íd.*
[4] *Íd.*, págs. 75-82.
[5] *Íd.*, págs. 258-261.
[6] *Íd.*, págs. 73-74.
[7] Apéndice 5 de la *Apelación*, págs. 62-72.
[8] *Íd.*
[9] *Íd.*, pág. 67.
[10] *Íd.*, págs. 73-74.

solicitó la partición de la comunidad hereditaria luego de los créditos correspondientes.[11]

Por otra parte, el 21 de septiembre de 2016 la señora Mazzuca presentó una *Moción en Solicitud de Deses*[ti]*mación por Insuficiencia de Emplazamiento y por la Demanda no alegar una causa de acción que justifique un remedio.*[12]

El 22 de octubre de 2018 el TPI emitió una *Resolución y Orden,* mediante la cual, entre otros asuntos, declaró No Ha Lugar la *Solicitud de Desestimación* presentada el 21 de septiembre de 2016.[13]

En respuesta, la señora Mazzuca presentó una *Contestación a Demanda* el 27 de noviembre de 2018.[14]

Tras varios trámites procesales, y concluido el descubrimiento de prueba, la Apelante presentó una *Moción en Solicitud de Sentencia Sumaria,* el 6 de noviembre de 2020.[15]

Por su parte, el Apelado presentó el 22 de diciembre de 2020, una *Réplica a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria.*[16]

Luego, el 28 de enero de 2021, la Apelante presentó su *Oposición a Réplica a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria.*[17]

Así las cosas, el 18 de mayo de 2021, notificada al día siguiente, el TPI dictó una *Resolución* mediante la cual declaró No Ha Lugar ambas solicitudes de sentencia sumaria.[18] Insatisfecha, la señora Mazzuca compareció el 30 de agosto de 2021 ante este

---

[11] Apéndice 1 de la *Apelación,* págs. 1-3.
[12] Apéndice 2 de la *Apelación,* págs. 4-44.
[13] Apéndice 3 de la *Apelación,* págs. 45-46.
[14] Apéndice 4 de la *Apelación,* págs. 47-51.
[15] Apéndice 5 de la *Apelación,* págs. 52-113.
[16] Apéndice 6 de la *Apelación,* págs. 114-163.
[17] Apéndice 7 de la *Apelación,* págs. 164-194.
[18] Apéndice 8 de la *Apelación,* págs. 195-209.

Tribunal mediante un recurso de *certiorari*, en el cual un panel hermano confirmó la *Resolución* dictada por el TPI.

Posteriormente, las partes de epígrafe comparecieron el 11 de enero de 2022 y presentaron un *Informe Preliminar de Conferencia con Antelación al Juicio*.[19]

Luego de varios trámites, el caso quedó sometido ante la consideración del TPI y celebrado el juicio, el 9 de agosto de 2023 el TPI dictó una *Sentencia*, notificada el 15 de agosto de 2023 en la cual declaró Ha Lugar la demanda radicada y condenó solidariamente a la señora Mazzuca y a Robert Odasz al pago de $53,851.45 a favor del Apelado.[20] En su *Sentencia*, esbozó las siguientes determinaciones de hechos:

1. La Sra. Molly Odasz t/c/c María Amalia Rivera Lacourt; Molly Odasz Castrillo; Molly Mary Castrillo Lacourt y Molly Odasz Castrillo falleció soltera el 23 de enero de 2016.
2. Le sobreviven los hijos Walter, Patricia y Robert Odasz, todos mayores de edad[.]
3. La Sra. Molly Odasz falleció luego de haber otorgado testamento abierto, conforme la escritura número 4 otorgado el 19 de octubre de 2004 ante la notario Griselle Teresa García Padilla. En el testamento se designó como Albacea a la Sra. Patricia Odasz.
4. La Sra. Patricia Odasz presentó ante el Tribunal el 4 de abril de 2016 una Petición para la expedición a su nombre de Cartas Testamentaria y así acreditar su autoridad como Albacea, las cuales fueron expedidas el 15 de abril de 2016 caso KJV2016-0652.
5. Conforme testamento número 4 otorgado el 19 de octubre de 2004 ante la notario Griselle Teresa García Padilla, la difunta instituyó como herederos en cuanto a la legítima larga a sus tres hijos, Walter, Patricia y Robert Odasz.
6. En el testamento se legó ciertos bienes que al momento de su muerte ya no son parte del caudal hereditario.
7. Igualmente se realizaron unos legados a dos de los hijos adjudicados al tercio de libre disposición que tampoco son parte del caudal.
8. Se legó $3,000.00 a Orlando Nieves lo cual se adjudicó.
9. Surge del testamento que doña Molly nació el 25 de octubre de 1920 en Mayagüez, Puerto Rico.

---

[19] Apéndice 9 de la *Apelación*, págs. 210-232.
[20] Apéndice 11 de la *Apelación*, págs. 346-359.

10. Al momento de su muerte Amalia Rivera Lacourt tenía 95 años.

11. Los únicos activos líquidos que son susceptibles de ser convertidos en dinero al momento son la cantidad de $82,159.02 consignada a la unidad de cuentas bajo el caso de epígrafe y $17,691 de la cuenta de Banco Popular número 019663013.

12. No hay pasivos que deducir del caudal.

13. La Sra. Patricia Odasz recibió de International Custom Molders of P. R. Inc., el cheque n[ú]mero 25027 por $100,000.00 con fecha de 24 de marzo de 2008 de Banco Popular.

14. Dicho cheque tiene el matasellos de Police & Fire FCU el cual tiene fecha de 29 de marzo de 2008.

15. El cheque es por concepto de una repartición de dividendo de Custom Molders of P. R., Inc., a favor de la Sra. Molly Odasz el cual fue entregado a Patricia Odazs por parte de su hermano Walter Odazs en representación de la corporación.

16. Antes del fallecimiento de la Sra. Molly Odasz, el 27 de mayo de 2009, la parte demandante presentó una Petición de Incapacidad, Caso Civil número KEX2009-0085.

17. El 2 de diciembre de 2011, notificada el 12 de diciembre de 2011, la Honorable Juez Carmen M[.] Merced Torres, de la Sala de Familia del Tribunal de San Juan en el caso KEX2008-0085 emitió Sentencia, declarando incapaz a la Sra. Molly Odasz.

18. Según surge de la sentencia la perito, Dra. Carmen M. Rodr[í]guez, quien es perito en siquiatría geriátrica, testificó que el 14 de abril de 2011 evaluó a la Sra. Molly Odasz y que tenía síntomas tales como p[é]rdida [de] memoria, atención, falta de orientación de tiempo y espacio, pobre juicio social, limitaciones cognitivas moderadas a severas y deterioro de la capacidad mental. Concluyó que la Sra. Molly Odasz estaba totalmente incapacitada, por lo que necesitaba atención constante. También indicó que la difunta tenía un diagnóstico de demencia por Alzheimer.

19. Prontamente, el demandante presentó una solicitud de reconsideración de la Sentencia por incapacidad solicitando Honorarios por Temeridad y Costas en un caso Ex Parte, contra sus hermanos Patricia y Robert Odasz, alegando que dilataron el proceso de incapacidad de su señora madre, por dos años, con el conocimiento de que su madre era incapaz. Se unió como evidencia acreditando lo alegado un correo electrónico de Patricia Odasz del 23 de enero de 2009, en el cual expresa su conocimiento del padecimiento de Alzheimer de su madre, un extracto de una deposición tomada el 20 de enero de 2010 donde se confronta a la demandada con lo expresado en el correo electrónico, una carta de 13 de julio de 2009 del Dr. Heriberto A[.] Acosta Velez en lo que asevera que la Sra. Molly Odasz padece de una pérdida de memoria severa tipo Alzheimer y una certificación m[é]dica del mismo doctor de 23 de febrero de 2009, estableciendo que la Sra[.] Molly Odasz presenta una

pérdida de memoria progres[iv]a tipo Alzheimers, que su condición requiere supervisión constante y su última evaluación fue el 24 de noviembre de 2008.

20. En relación a la solicitud de Honorarios por Temeridad y pago de costas, el Tribunal emitió una Resolución transcrita el 6 de marzo de 2012, notificada el 9 de marzo de 2012. En la Resolución se expone que, como cuestión de hecho los interventores, refiriéndose a los codemandados Robert y Patricia Odasz, presentaron oposición a todas las solicitudes del peticionario, controvirtieron cada alegación presentada mediante peticiones de desestimación y numerosas mociones que requirieron numerosas órdenes y celebración de no menos de cinco vistas. Luego el Tribunal detalla actuaciones de los peticionarios que obligó que la determinación de incapacidad de su difunta madre se dilatara por dos años. Sobre el particular de la incapacidad el Tribunal destacó que los interventores se obstinaron en litigar innecesariamente esa controversia, a pesar de que conocían de la misma y de los diagnósticos médicos de demencia vascular o demencia por Alzheimer. Luego recalca el tribunal que los interventores provocaron dilaciones en el trámite del caso motivadas por sus cuestionamientos en torno a la prueba pericial sobre la declaración de incapacidad solicitada, la cual eventualmente ni objetaron ni refutaron. Fundamentado en lo aquí indicado, entre otras, el Tribunal impuso honorarios por temeridad de $4,000.00 a los codemandados Robert y Patricia Odasz.

21. Surge de la prueba que entre los años 2004 al 2006 el codemandado Robert Odazs, recibió de su madre la cantidad de $274,100.00 los cuales pudo justificar el motivo de los mismos y los cuales no ha devuelto. Tampoco se presentó planilla de donación sobre el particular. El demandado no declaró sobre si dicho dinero fue en calidad de donación a su favor.

22. El 24 de noviembre de 2008 la Sra. Molly Odasz otorgó un poder especial ante la notario Yolina C[.] Suoto.

23. Dicho poder se brindó autoridad a Patricia Odasz sobre los bienes de dona Molly Odasz para que tomara aquellas medidas de protección sobre dichos bienes para preservar su valor o aumentarlo, exigir el pago de sus depósitos [y "…]*para efectuar todo acto que estime la apoderada como necesario para preservar y proteger los derechos de la poderante sobre los bienes y derechos antes mencionados y para asegurar el mayor valor, crecimiento y estabilidad de sus bienes, cuentas, depósitos, líneas de crédito e intereses."*

24. Que dicho poder no autorizaba a Patricia Odasz para gastar dinero en asuntos que no aseguraran el valor, crecimiento y estabilidad de los fondos de doña Molly.

25. Que la cantidad de $100,000.00 pagado a Patricia Odasz en marzo de 2008 era por concepto de un pago de dividendo de Custom Molders of P.R., Inc., a favor de la Sra. Molly Odasz.

26. Que del dinero producto de dicho cheque la codemandada pagó $37,901.00 entre septiembre de 2008 a febrero de 2012 a su hermano Robert Odasz.

27. Que del dinero producto de dicho cheque Patricia Odasz entregó a su represen[tan]te legal $24,323.47.

28. Que la demandada no pudo justificar el uso de $10,000.00 de los fondos del cheque de dividendo.

29. Que del dinero producto de dicho cheque Patricia Odasz entregó al Lcdo. Jose Figueroa $2,500.00 para un caso donde el licenciado no defendía a la Sra. Molly Odasz. Era abogado de Robert Odasz según surge de la sentencia de determinación de incapacidad en el caso KEX2009-0085.

30. Que del dinero producto de dicho cheque Patricia Odasz pagó $7,766.00 en una tarjeta de crédito American Express.

31. Que del dinero producto de dicho cheque Patricia Odasz pagó $1,300.00 para viajes a Puerto Rico.

32. Del desglose radicado de la prueba de la codemandada Patricia Odasz la única prueba que tiene justificación es el gasto de $490.00 por concepto de una estufa en beneficio de la difunta.

33. La suma de las cantidades no justificadas suma $84,040.47.

34. Que la cantidad de $84,040.47 no se utilizaron para asegurar el mayor valor, crecimiento y estabilidad de sus bienes, cuentas, depósitos, líneas de crédito e intereses, de doña Molly Odasz.

35. Surge de la prueba que la codemandada Patricia Odasz conocía o debía conocer que, para el 24 de noviembre de 2008, Molly Odasz padecía de Alzheimer.

36. Que en la sentencia de incapacidad emitida por el Tribunal en el caso KEX2009-0085 se les imputa a ambos de demandados que conocían de la condición incapacitante previo a la declaración de incapacidad, cuyo resultado pudo ser en menos tiempo y con menos molestias.

37. Surge de una orden emitida el 27 de febrero de 2013, que la codemandada, Patricia Odasz, fue sancionada por $500.00 en el caso KEX2009-0085, por no proveer, conforme ordenado, el uso del cheque de $100,00.00.

Inconforme aún, el 14 de septiembre de 2023, la Apelante presentó una *Apelación* y esbozó el siguiente señalamiento de error:

**ÚNICO SEÑALAMIENTO DE ERROR:** Erró el Honorable Tribunal de Primera Instancia al concluir que la Sra. Patricia Mazzuca no justificó conforme los poderes otorgados por su señora madre, doña Molly, el uso del dinero dado a ella en beneficio de su madre, y por consiguiente, ordenarle el pago solidario de $53,851.45; lo anterior apart[á]ndose de todo l[o] desfilado en el juicio en su fondo.

Luego de varias incidencias procesales, el 8 de diciembre de 2023, la Apelante presentó un *Alegato Suplementario*. El 14 de diciembre de 2023, el Apelado presentó una *Oposición a Escrito de Apelación Suplementario Radicado por la Apelante Patricia Odasz*. Además, el 29 de diciembre de 2023, el Apelado presentó una *Réplica a Escrito de Apelación*.

## II.

## A.

La muerte de un causante en Puerto Rico provoca la apertura de su sucesión. En ese momento, surge el derecho a adquirir la propiedad y la posesión de los bienes que constituyen el caudal hereditario.[21] Se configura una comunidad hereditaria cuando son más de uno los herederos llamados a una sucesión.[22]

Debido a que ningún heredero está obligado a permanecer en la comunidad hereditaria, conforme al Código Civil de Puerto Rico, puede solicitar que se divida o se haga la partición correspondiente.[23] Un heredero solo estará obligado a permanecer en estado de indivisión cuando el testador expresamente hubiese prohibido la división del caudal o de alguno de los bienes.[24] En nuestra jurisdicción la división de la comunidad hereditaria se puede realizar mediante la partición testamentaria, la partición convencional o la *partición judicial*.

Este último acto jurídico se realiza cuando los herederos no pueden ponerse de acuerdo en cuanto a la forma de efectuar la partición de los bienes. Antes de la partición judicial, los herederos son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario. El acto jurídico sirve para convertir las participaciones indivisas en la herencia en bienes determinados o

---

[21] *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 525, 532-533 (1995).
[22] *Cintrón Vélez v. Cintrón De Jesús*, 120 DPR 39, 48 (1987).
[23] 31 LPRA sec. 2857. Se hace referencia al Código Civil de 1930 debido a que la causante falleció antes de la vigencia de la Ley 5-2020.
[24] 31 LPRA secs. 2871-2872.

cuotas sobre bienes determinados.[25] El Código Civil permite que cualquiera de los herederos solicite la partición judicial de una herencia cuando no existe un acuerdo del modo en que se llevará a cabo la partición.[26] El propósito de la partición judicial es obtener la terminación de la comunidad hereditaria, por lo que es el procedimiento adecuado para ponerle fin al estado de indivisión de una herencia.[27]

La partición legalmente hecha confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados.[28] En el acto de partición de herencia, tradicionalmente se han estimado como operaciones necesarias, las de inventario, avalúo, colación, liquidación, división y adjudicación.[29]

En la etapa de la liquidación se determinan los bienes gananciales y privativos del causante, las legítimas de los herederos forzosos, la legítima del cónyuge viudo, las mejoras y los legados.[30] Luego, procede el señalamiento de la cuota numérica que a cada heredero o legatario le corresponda.[31]

**B.**

El artículo 989 del Código Civil de Puerto Rico dispone que un heredero forzoso que concurra con otros deberá traer a la masa hereditaria los bienes o valores que hubiese recibido del causante de la herencia, en vida de éste, por dote, donación u otro título lucrativo, para computarlo en la regulación de las legítimas y en la cuenta de partición.[32]

A esos efectos, la colación es un ejercicio contable "que consiste en sumarle a la herencia el valor de lo transmitido

---

[25] *Sucn. Sepúlveda Barreto v. Registrador*, 125 DPR 401, 405 (1990).
[26] 31 LPRA sec. 2872.
[27] *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 176 (2005).]; *Arrieta v. Chinea, supra*, pág. 534.
[28] 31 LPRA sec. 2901.
[29] *Silva v. Srio. de Hacienda*, 86 DPR 332, 342 (1962).
[30] Id.
[31] Id.
[32] 31 LPRA sec. 2841.

gratuitamente por el causante durante su vida a sus herederos legitimarios e imputarle dichas liberalidades a la porción sucesoria de los herederos que las recibieron, de forma que las tomen de menos de los bienes que el causante les dejó a su fallecimiento".[33] Este cómputo persigue la igualdad entre los herederos y la "justicia distributiva".[34]

Claro está, el donante-causante puede dispensar al donatario-heredero de colacionar la donación, pero ello deberá expresarlo palmariamente; y tendrá lugar únicamente si la donación no resulta inoficiosa.[35] El artículo 999 del Código Civil establece que la cantidad a colacionar será el valor de la cosa donada al momento de la donación.[36]

## C.

El Tribunal Supremo de Puerto Rico ha expresado que, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[37] Por ello, es norma firme que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y respeto por parte de los foros apelativos.[38] En la revisión de un dictamen en el que desfiló prueba testifical, este tribunal revisor debe conferir la debida deferencia a la apreciación de los hechos efectuada por el juzgador, por ser éste el más idóneo para llevar a cabo esa función.[39]

---

[33] *Rodríguez Pérez v. Sucn. Rodríguez*, 126 DPR 284, 298-299 (1990), que cita a M. Albaladejo García, *Curso de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. V, pág. 186.

[34] *Rodríguez Pérez v. Sucn. Rodríguez, supra,* pág. 299.

[35] Cód. Civil de PR, art. 990, 31 LPRA sec. 2842.

[36] 31 LPRA sec. 2850. Véase, *Toro Morales v. Toro Cruz*, 161 DPR 391, 406 (2004).

[37] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Pueblo v. Miranda Ortiz*, 117 DPR 188, 191 (1986).

[38] *González Hernández v. González Hernández, supra*; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Argüello v. Argüello*, 155 DPR 62, 79 (2001); *Trinidad v. Chade*, 153 DPR 280, 291 (2000).

[39] *McConnell v. Palau*, 161 DPR 734, 750 (2004).

En suma, "[l]a determinación de credibilidad del tribunal sentenciador "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos".[40] Ello así, porque sólo el juez o la jueza de primera instancia tiene la oportunidad de ver al testigo declarar, escuchar su testimonio vivo y evaluar su *demeanor*.[41] Además, la Regla 110 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110, dispone que un testigo que merezca entero crédito al Tribunal de Primera Instancia es prueba suficiente de cualquier hecho.

Por lo anterior, el Tribunal Supremo ha resuelto que la apreciación de la prueba y la credibilidad de los testigos que realice el Tribunal de Primera Instancia no deben ser sustituidas por las del Tribunal de Apelaciones.[42] Únicamente, cuando del examen de la prueba se desprenda que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles es que se ha justificado nuestra intervención con la apreciación de la prueba realizada por el tribunal *a quo*.[43] En esos casos, estamos autorizados a intervenir, ya que la apreciación de la prueba oral se distancia de los hechos o los testimonios son inherentemente imposibles o increíbles.[44]

Claro está, a pesar de la norma de deferencia judicial, la máxima curia ha indicado que, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, los tribunales revisores nos encontramos en la misma posición que

---

[40] *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987), citado en *Argüello v. Argüello, supra*, pág. 79.
[41] *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357, 365 (1982).
[42] *Rolón García y otros v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[43] *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972).
[44] *Pueblo v. Soto González*, 149 DPR 30, 37 (1999).

el foro impugnado.[45] Por lo tanto, este tribunal intermedio está facultado para adoptar un criterio propio en la apreciación y evaluación de la prueba documental o pericial.[46] En consecuencia, en el caso de un conflicto irreconciliable entre la prueba testifical y la prueba documental, aquellas determinaciones de hecho basadas en estas últimas pueden ser alteradas.[47]

### III.

En la presente causa, la señora Mazzuca alega que el TPI incidió al concluir que no justificó, conforme a los poderes otorgados por la señora Molly, el uso del dinero dado a ella en beneficio de su madre y, por consiguiente, ordenarle el pago solidario de $53,851.45. No le asiste la razón.

Estudiado el expediente ante nos, es menester concluir que la señora Mazzuca no logró justificar el uso del dinero. Es importante destacar que la Apelante siguió gastando el dinero después de la notificación de la sentencia de incapacidad de la señora Molly. Surge, además, de la prueba presentada que no se ha devuelto el dinero objeto de esta controversia. Aunque el testamento exime de la colación a las donaciones recibidas, no hay evidencia de que estos fondos fueron donados o entregados gratuitamente. Por tanto, tal y como ordenó el TPI, procede devolver el dinero al caudal hereditario.

En ausencia de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y respeto.

### IV.

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

---

[45] *González Hernández v. González Hernández, supra*, pág. 777.
[46] *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Maryland Casualty Co.*, 98 DPR 594, 623 (1970).
[47] *Díaz García v. Aponte Aponte*, 125 DPR 1, 13-14 (1989).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.   La Juez Brignoni Mártir concurre sin opinión escrita.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones